1   ERIK C. van HESPEN. (Cal. Bar # 214774 )
2   2512 Clay St.
    Alameda, CA 94501
    (415) 305-2365          E-filing

3

4   Attorney for Plaintiffs
    ELDRIDGE JOHNSON, MARIO ECUNG, LEON MILLER, XAVIER PALMER, KENNETH
5   MONTGOMERY, ANNETTE GADSON, PAUL C. NOBLE, JOHNNIE E. JONES, Jr.,
    FREDERICK ROBINSON, GLEN ROANE, DAVID RICKETTS, LESTER TOM, TERRY
6   HAYNIE, SAL CROCKER, ANTHONY MANSWELL, BARRY BATSON, KARL MINTER,
    ERWIN WASHINGTON, DARRYL WILSON, MARNEL ALEXIS, LEO SHERMAN, KEN
7   HANEY, RICHARD JOHN,  and ODIE BRISCOE

8

9                    UNITED STATES DISTRICT COURT      15-469 WHO

10                 NORTHERN DISTRICT OF CALIFORNIA

11  ELDRIDGE JOHNSON, MARIO ECUNG,      )   Case No.
    LEON MILLER, XAVIER PALMER,         )
12  KENNETH MONTGOMERY, ANNETTE         )   COMPLAINT FOR DAMAGES AND
    GADSON, PAUL C. NOBLE, JOHNNIE E.   )   INJUNCTIVE RELIEF
13  JONES, Jr., FREDERICK ROBINSON,     )
    GLEN ROANE, DAVID RICKETTS,         )   (1) DISCRIMINATION BASED ON RACE
14  LESTER TOM, TERRY HAYNIE, SAL       )   (FEHA)
15  CROCKER, ANTHONY MANSWELL,          )   (2) DISCRIMINATION BASED ON RACE
    BARRY BATSON, KARL MINTER, ERWIN    )   (TITLE VII)
16  WASHINGTON, DARRYL WILSON,          )   (3) DISCRIMINATION IN VIOLATION OF
    MARNEL ALEXIS, LEO SHERMAN, KEN     )   42 U.S.C. §1981
17  HANEY, RICHARD JOHN, and ODIE       )   (4)DISCRIMINATION IN VIOLATION OF
18  BRISCOE                             )   42 U.S.C. §1981
                                        )   (5) RETALIATION (TITLE VII)
19                                      )   (6)  HARASSMENT (FEHA)
              Plaintiffs,               )   (7) DISCRIMINATION BASED ON RACE
20                                      )   (FEHA)
         v.                             )   (8) RETALIATION (FEHA)
21                                      )
    UNITED CONTINENTAL HOLDINGS,        )
22  INC.; UNITED AIRLINES, INC.;        )   JURY TRIAL DEMANDED
23  CONTINENTAL AIRLINES, INC.; and     )
    DOES 1-10                           )
24                                      )
              Defendants.               )
25                                      )
                                        )
26                                      )

27

28

                                        1
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Plaintiffs ELDRIDGE JOHNSON, MARIO ECUNG, LEON MILLER, XAVIER PALMER,

2  KENNETH MONTGOMERY, ANNETTE GADSON, PAUL C. NOBLE, JOHNNIE E. JONES,

3  Jr., FREDERICK ROBINSON, GLEN ROANE, DAVID RICKETTS, LESTER TOM, TERRY

4  HAYNIE, SAL CROCKER, ANTHONY MANSWELL, BARRY BATSON, KARL MINTER,

5  ERWIN WASHINGTON, DARRYL WILSON, MARNEL ALEXIS, LEO SHERMAN, KEN

6  HANEY, RICHARD JOHN, and ODIE BRISCOE file this Complaint, and complain of the

7  named Defendants, and each of them, jointly and severally, and for causes of action, alleges as

8  follows:

9  **INTRODUCTION**

10  1. Individual Plaintiffs Eldridge Johnson ("Johnson"), Mario Ecung ("Ecung"), Leon Miller

11  ("Miller"), Xavier Palmer ("Palmer"), Kenneth Montgomery ("Montgomery"), Annette Gadson

12  ("Gadson"), Paul C. Noble ("Noble"), JOHNNIE E. JONES, Jr. ("Jones"), Frederick Robinson

13  ("Robinson"), Glen Roane ("Roane"), David Ricketts ("Ricketts"), Lester Tom ("Tom"), Terry

14  Haynie ("Haynie"), Sal Crocker ("Crocker"), Anthony Manswell ("Manswell"), Barry Batson

15  ("Batson"), Karl Minter ("Minter"), Erwin Washington ("Washington"), Darryl Wilson

16  ("Wilson"), Marnel Alexis ("Alexis"), Leo Sherman ("Sherman"),  Ken Haney ("Haney"),

17  Richard John ("John"), and Odie Briscoe ("Briscoe") (collectively "Plaintiffs"), on behalf of

18  themselves allege as follows:

19  **PRELIMINARY STATEMENT**

20  2. This race discrimination action is brought by African-American Captains and Operations

21  Supervisors ("Minority Employees") employees of Defendant United Airlines ("UAL").

22  Twenty-two of the twenty-four Plaintiffs  are African-American Captains ("Minority Captains")

23  at United Airlines and Continental Airlines, who have been illegally passed over for promotions.

24  Two of the twenty-three Plaintiffs are African-American Operation Supervisors ("Minority

25  Operation Supervisors") who have been illegally passed over for promotions.

26  3. Plaintiffs allege that Defendants engage in a continuing policy and practice of racial

27  discrimination through the use of subjective and arbitrary decision making against its African-

28  American Captains (1) disproportionately assigning Non-Minority Employees to temporary

2

1   management positions to which similarly situated Minority employees are rarely assigned and;

2   (2) providing Minority Employees with fewer promotions to management positions than

3   provided to similarly situated Non-Minority employees.

4   4. Plaintiffs allege that Defendants engage in a continuing policy and practice of racial

5   discrimination through the use of subjective and arbitrary decision-making against its African-

6   American Captains by providing Minority Captains and Operation Supervisors with fewer

7   promotions to higher management grade levels than provided to similarly situated Non-Minority

8   Captains and Operation Supervisors.

9   5. This action seeks an end to these discriminatory practices, and seeks declaratory and

10   injunctive relief, including rightful place relief, back pay, front pay, and compensatory and

11   punitive damages for the individual Plaintiffs.

12                            **JURISDICTION AND VENUE**

13   6. This Court has jurisdiction over this action under 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)

14   (3) and 42 U.S.C. §1981. The action presents federal questions under Title VII of the Civil

15   Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended, and 42 U.S.C. §1981.

16   7. Venue is proper in this district pursuant to 42 U.S.C. §2000e5(f) and 28 U.S.C. §1391(b) &

17   (c). All the named Plaintiffs' claims, by the nature of the transitory nature of the airline and

18   transportation industry, arose throughout the country and internationally, and many of the acts

19   complained of herein occurred in this District and gave rise to the claims alleged. Defendants

20   employ thousands of workers in the State of California.

21                                 **THE PARTIES**

22   8. Plaintiff Eldridge Johnson is an African American currently employed by Defendant UAL as a

23   Captain. Plaintiff Johnson has been employed by Defendants from approximately April 1978

24   until present. Plaintiff Johnson is a resident of Oakpark, Illinois, and maintains a base residence

25   within this judicial district.

26   9. Plaintiff Mario Ecung is an African American currently employed by Defendant UAL as a

27   Captain. Plaintiff Ecung has been employed by Defendants from approximately June 1985 until

28   present. Plaintiff Ecung is a resident of Los Angeles, California.

<div align="center">3</div>

1    10. Plaintiff Leon Miller is an African American currently employed by Defendant UAL as a

2    Captain. Plaintiff Miller has been employed by Defendants from approximately April 1995 until

3    present. Plaintiff Miller is a resident of Denver, Colorado.

4    11. Plaintiff Xavier Palmer is an African American currently employed by Defendant UAL as a

5    Captain. Plaintiff Palmer has been employed by Defendants from approximately March 1991

6    until present. Plaintiff Palmer is a resident of Moreno Valley, California.

7    12. Plaintiff Ken Montgomery is an African American currently employed by Defendant UAL as

8    a Supervisor of Airport Operations.  Plaintiff Montgomery has been employed by Defendants

9    from approximately July 1986 until present. Plaintiff Montgomery is a resident of Woodbridge,

10    Virginia.

11    13. Plaintiff Annette Gadson is an African American currently employed by Defendant UAL as a

12    Hub Supervisor. Plaintiff Gadson has been employed by Defendants from approximately July

13    1986 until present. Plaintiff Gadson is a resident of Teaneck, New Jersey.

14    14. Plaintiff Paul Noble is an African American currently employed by Defendant UAL as a

15    Captain. Plaintiff Noble has been employed by Defendants from approximately May 1988 until

16    present.  Plaintiff Noble is a resident of Port St. Lucie, Florida.

17    15. Plaintiff JOHNNIE E. JONES, Jr. is an African American currently employed by Defendant

18    UAL as a Captain. Plaintiff Jones has been employed by Defendants from approximately June

19    1988 until present. Plaintiff Jones is a resident of Fayetteville, Georgia.

20    16. Plaintiff Fredrick Robinson is an African American currently employed by Defendant UAL

21    as a Captain. Plaintiff Robinson has been employed by Defendants from approximately

22    September 1988 until present. Plaintiff Robinson is a resident of Denver, Colorado.

23    17. Plaintiff Glen Roane is an African American currently employed by Defendant UAL as a

24    Captain. Plaintiff Roane has been employed by Defendants from approximately October 1988

25    until present. Plaintiff Roane is a resident of Raleigh, North Carolina.

26    18. Plaintiff David Ricketts is an African American currently employed by Defendant UAL as a

27    Captain. Plaintiff Ricketts has been employed by Defendants from approximately November

28    1988 until present. Plaintiff Ricketts is a resident of Ellicott City, Maryland.

4

19. Plaintiff Lester Tom is an African American currently employed by Defendant UAL as a Captain. Plaintiff Tom has been employed by Defendants from approximately December 1988 until present. Plaintiff Tom is a resident of Algonquin, Illinois.

20. Plaintiff Terry Haynie is an African American currently employed by Defendant UAL as a Captain. Plaintiff Haynie has been employed by Defendants from approximately December 1988 until present. Plaintiff Haynie is a resident of Brookfield, Connecticut.

21. Plaintiff Sal Crocker is an African American currently employed by Defendant UAL as a Captain. Plaintiff Crocker has been employed by Defendants from approximately February 1989 until present. Plaintiff Crocker is a resident of Humble, Texas.

22. Plaintiff Anthony Manswell is an African American currently employed by Defendant UAL as a Captain. Plaintiff Manswell has been employed by Defendants from approximately August 1989 until present. Plaintiff Manswell is a resident of Tamarac, Florida.

23. Plaintiff Barry Batson is an African American currently employed by Defendant UAL as a Captain. Plaintiff Batson has been employed by Defendants from approximately January 1991 until present. Plaintiff Batson is a resident of Chicago. Illinois.

24. Plaintiff Karl Minter is an African American currently employed by Defendant UAL as a Captain. Plaintiff Minter has been employed by Defendants from approximately March 1992 until present. Plaintiff Minter is a resident of Haymarket, Virginia.

25. Plaintiff Erwin Washington is an African American currently employed by Defendant UAL as a Captain. Plaintiff Washington has been employed by Defendants from approximately November 1992 until present. Plaintiff Washington is a resident of Lakewood, Colorado.

26. Plaintiff Darryl Wilson is an African American currently employed by Defendant UAL as a Captain. Plaintiff Wilson has been employed by Defendants from approximately September 1992 until present. Plaintiff Wilson is a resident of Roswell, Georgia.

27. Plaintiff Marnel Alexis is an African American currently employed by Defendant UAL as a Captain. Plaintiff Alexis has been employed by Defendants from approximately November 1992 until present. Plaintiff Alexis is a resident of Boca Raton, Florida.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

28. Plaintiff Leo Sherman is an African American currently employed by Defendant UAL as a Captain. Prior to being employed at UAL Sherman was employed at Continental Airlines from approximately January 1998 until the merger in November 2011.   Plaintiff Sherman has been employed by Defendants from approximately November 2011 until present. Plaintiff Sherman is a resident of Porter, Texas.

29. Plaintiff Ken Haney is an African American currently employed by Defendant UAL as a Captain. Plaintiff Haney has been employed by Defendants from approximately November 1992 until present. Plaintiff Haney is a resident of Houston, Texas.

30. Plaintiff Richard John is an African American currently employed by Defendant UAL as a Captain. Plaintiff John has been employed by Defendants from approximately January 1993 until present. Plaintiff John is a resident of Brooklyn, New York.

31. Plaintiff Odie Briscoe is an African American currently employed by Defendant UAL as a Captain. Prior to being employed at UAL Briscoe was employed by Defendant Continental Airlines from approximately October 1997 until the merger in November 2011.   Plaintiff Briscoe has been employed by Defendants from approximately November 2011 until present. Plaintiff Briscoe is a resident of Weston, Florida.

32. Defendant United Continental Holdings, Inc., is a Delaware Corporation, licensed to and doing business within this judicial district.

33. Defendant United Air Lines, Inc. is a Delaware Corporation licensed to and doing business within this judicial district; 100% of whose stock is owned by Defendant United Continental Holdings, Inc.

34. Defendant Continental Airlines, Inc. is a Delaware Corporation doing business within this judicial district, 100% of whose stock is owned by Defendant United Continental Holdings, Inc..

35. Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. (collectively, "UAL") maintain an integrated enterprise; whereby the operations of UAL are interrelated to a high degree, including common employment policies, control of human resources and EEO functions, including the sharing of personnel and resources.

6

36. Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. (collectively, "UAL") share common management, including the same management personnel.

37. Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. (collectively, "UAL") share common control of labor relations.

38. Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. (collectively, "UAL") share complete common ownership and financial control.

39. Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. (collectively, "UAL") exercise substantial control over the time, manner, and place of performance of Plaintiffs' work performance.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

**A.     UAL's Discriminatory Policies and Practices**

40.  Defendants engage in a pattern and practice of highly subjective decision making regarding employment matters that is discriminatory to Minority Captains and Operations Supervisors, and in particular African American Captains and Operations Supervisors, and is manifested in assignments to temporary management positions and permanent promotions. While Defendants have policies designed to govern these matters, many of these policies involve uncontrolled subjective criteria and/or are applied by Defendants in an arbitrary and capricious manner.   As a result, racial biases and stereotypes enter into Defendants' employment decisions.

41.  Defendants' system of subjective and arbitrary decision making has an adverse impact on African American Captains relative to their non-African American peers with respect to (a) temporary management positions and; (b) promotion to permanent management positions. This impact is not justified by business necessity. Even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

42.  Defendants also engage in intentional discrimination against African American Operations Supervisors with respect to promotion to permanent management positions.

43.  Defendants have discriminated against Minority Captains by use of a dual employment track. For example, Defendants select some employees for temporary management positions

7

1   every month. The temporary positions are more lucrative and provide employees with more

2   opportunities for advancement, greater job security, and greater pay and benefits. Defendants

3   have a systematic pattern and practice of relegating qualified African American Employees to

4   part-time jobs, with lesser job security, compensation, and opportunity for advancement.

5   Defendants typically reserve the full-time, permanent, higher wage positions for non-African

6   American employees. Consistent with Defendants' long-standing discriminatory policies and

7   practices, Defendant typically hires and promotes African American Employees only to positions

8   outside of management.

9   44.   Even when Defendants do promote African American Employees into permanent

10  management positions, it does not promote them as quickly as their similarly situated non-

11  African American counterparts.   To be promoted from a Captain or Operations Supervisor into a

12  permanent management position, Defendants' employees must be handpicked for a position or

13  apply and go through an interview process.   During the interview process Defendants rely on

14  discretionary decision making which results in a disparate impact upon African American

15  Employees with respect to promotions, and which Defendants know has a statistically significant

16  adverse impact on African Americans, and which has not been validated. The discretionary

17  decision making applies uniformly to all applicants. Defendants also use uniform performance

18  evaluations that have adverse impact and have not been validated, and that are the basis for

19  promotion decisions under Defendants' policies.

20  45. Virtually all African-American Employees of Defendants occupy non-management positions.

21  Defendants disproportionately fail to promote qualified African American Employees to

22  management positions in general and instead disproportionately promote similarly situated or

23  less qualified Non-African American employees to those positions.

24  46. The few African American Employees who are able to break into the management ranks are

25  usually promoted in small numbers usually designed to give the appearance of commitment to

26  diversity.   Once promoted, these African American managers, however, are themselves often

27  subjected to discriminatory practices that minimize their opportunities for further advancement.

28  Such practices include, for example, exclusion of African American managers from "informal"

8

1    email communications and social gatherings that are used to communicate relevant operating

2    procedures, discuss managerial issues, and post corporate advancement opportunities.

3    47. This pattern of denying African American Captains and Operations Supervisors promotions,

4    is not the result of random or non-discriminatory factors. Rather, it is the result of an ongoing

5    and continuous pattern and practice of intentional race discrimination in assignments,

6    compensation and promotions. It is further the result of reliance on policies and practices that

7    have an adverse impact on African American Employees which cannot be justified by business

8    necessity, and for which alternative policies and practices with less discriminatory impact could

9    be utilized that would equally serve any asserted business necessity. Plaintiffs are informed and

10   believe that such policies and practices continue up the present and include, without limitation:

11   (a)     Failure to consistently post job and promotional openings to ensure that all African

12   American Captains and Operations Supervisors have notice of and opportunity to seek

13   advancement, higher compensation, overtime, or more desirable assignments and training;

14   (b)     Reliance upon unweighted, arbitrary, and subjective criteria in making promotional

15   decisions.  Even where Defendants' policies state objective requirements,   these requirements are

16   often applied in an inconsistent manner and ignored at the discretion of management;

17   (c)     Reliance on racial stereotypes in making employment decisions involving  management

18   promotions;

19   (d)     Pre-selection and "grooming" of Non- African American employees for promotion,

20   favorable assignments, higher pay, and more desirable positions;

21   (e)     Maintenance of largely racially segregated job categories and departments;

22   (f)     Deterrence and discouragement of African American Captains and Operations

23   Supervisors from seeking advancement, training, favorable assignments and higher paid, more

24   desirable positions.

25   48. As a proximate result of the racially discriminatory employment practices and other wrongful

26   acts alleged herein, Plaintiffs have suffered loss of income, loss of advancement and promotion,

27   loss of career opportunity, and/or loss of intangible job benefits. As a proximate result of the

28   racially discriminatory employment policies, practices and other wrongful acts alleged herein,

9

1  Plaintiffs have experienced pain, suffering, severe emotional and mental distress, shame,

2  humiliation, embarrassment, and related physical ailments.

3  <div align="center">**ALLEGATIONS OF INDIVIDUAL PLAINTIFFS**</div>

4  <div align="center">**ELDRIDGE JOHNSON**</div>

5  49. Captain Johnson was hired at United Airlines on April 10, 1978 as a Flight Officer.

6  50. Prior to working at United Airlines, Captain Johnson served in the U.S. Army for four years.

7  Captain Johnson served in Vietnam working as a Helicopter Crew Chief and Door Gunner from

8  June 1968 to June 1969 and became a Maintenance Officer Test Pilot/Gun-Ship Pilot from

9  February 1971 to February 1972. Captain Johnson then joined the Illinois Air Force National

10 Guard where he worked as a Maintenance Officer Test Pilot to State Director of Operations for

11 all three Illinois air bases. Captain Johnson served in the Illinois Air Force National Guard from

12 January 1979 to November 1997. Captain Johnson then worked for the Headquarters Air Force

13 as Logistics Weapons Officer from December 1997 to July 2002, an elite group of Maintenance

14 Officers tasked with maintaining all US Air Force aircraft. Captain Johnson also works a

15 Department of Home Land Security, Federal Flight Deck Officer.

16 51. In 1974, Captain Johnson graduated from Daley Junior College and obtained an Associate of

17 Applied Science Degree in Aviation. In 1980, Captain Johnson obtained a Liberal Arts degree

18 from Chicago State University. In 1998, Captain Johnson obtained an Airframe and Powerplane

19 License from the Bakers School of Aeronautics. In 2002, Captain Johnson obtained his Masters

20 of Arts in Military Studies from the American Military University.

21 52. Captain Johnson served as a 737 Second Officer/Flight Engineer from 1978 to 1981. In

22 November 1981, Captain Johnson was promoted to First Officer at Midway Airlines and worked

23 there until June 1984. Throughout Captain Johnson's career, he has been promoted to the

24 following positions: 727 Second Officer, 727 First Officer, DC-10 First Officer, 737 Captain, and

25 757/767 Captain. Captain Johnson was also Captain on the Boeing 777 for several years and is

26 currently a Boeing 747 Captain.

27

28

<div align="center">10</div>

53. Captain Johnson has heard many derogatory racial comments from other employees at United such as, "They are really scraping the bottom of the barrel hiring all these minorities and women," knows of the racial epithets being written in the workplace.

54. Captain Johnson, who is part of the United Coalition, filed his first EEOC charge on June 14, 2010.

55. Captain Johnson has applied to five management positions since 2011. Captain Johnson applied for the Technology and Flight Test Managing Director, Flight Operations Managing Director, Flight Operations Crew Resources Managing Director, System Chief Pilot, and Fleet Standards Senior Manager. Captain Johnson interviewed in February 2012 for the 787 Fleet Standards Senior Manager position.  A month later, Defendants called Captain Johnson and said someone else was chosen. Captain Johnson has only been invited to interview twice out of his five applications.

56. Captain Johnson filed his second EEOC Charge on February 27, 2012. Captain Johnson is still waiting for a Right-to-Sue letter from the EEOC.

57. Captain Johnson, who is based in California, obtained his immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on March 14, 2012

**MARIO ECUNG**

58. Captain Ecung's career at United Airlines began on June 18, 1985 as a B-727 Second Officer.

59. Prior to working at United, Captain Ecung served in the U.S. Navy. From 1977 to 1979, Captain Ecung worked as an Commissioned Ensign United States Navy.  In 1979, Captain Ecung received Navy Wings.

60. In 1980, Captain Ecung was assigned to Patrol Squadron 50. In 1980, Captain Ecung was promoted to Lieutenant Junior Grade and also worked as an Educational Services Officer. In 1982, Captain Ecung was promoted to Lieutenant and worked as a Maintenance Division Officer. From 1982 to 1983, Captain Ecung worked as an Assistant Administrative Officer for VP-50. In 1983, Captain Ecung worked as a Patrol Plane Commander and an Instrument Check Pilot. From 1983 to 1984, Captain Ecung was a Navy Recruiter in New Orleans, Louisiana. Captain Ecung was assigned to Patrol Squadron 65 (VP-65) from 1985 to 1989. In 1985, Captain Ecung was

11

1     promoted to Lieutenant Commander and promoted to Patrol Plane Commander of Patrol

2     Squadron 65 until 1989.

3     61. Captain Ecung graduated from Texas Southern University with a Bachelors of Science

4     degree in Mathematics in 1977.

5     62. Upon being hired at UAL, Captain Ecung flew as a Second Officer for four years at the same

6     time he was a Patrol Plane Commander for the U.S. Navy. From 1985 to 1989, Captain Ecung

7     was a 727 Second Officer. In March 1989, Captain Ecung was promoted to a First Officer. After

8     four years, Captain Ecung became a Boeing 737-200 Captain in 1993. From 1996 to 1998,

9     Captain Ecung was a Shuttle Flight Manager for the B-737/300. From 1998 to 2000, Captain

10     Ecung was DC-10 Captain and Flight Manager. From 2000 to 2002, Captain Ecung was a B-

11     767/757 Flight Manager. Captain Ecung is currently a B-767/757 Captain.

12     63. In 1995, Captain Ecung was approached by Flight Manager Gregory Colliton and Chief Pilot

13     Gary Meermans to sit in as an acting Flight Manager in the Los Angeles office. Captain Ecung

14     accepted the opportunity and held this position for six months. In March 1996, Captain Ecung

15     interviewed with the Chief Pilot, Flight Manager, and Human Resources Representative for a full

16     time Flight Manager position. Captain Ecung was offered and accepted the Flight Manager

17     position. Captain Ecung also became qualified as a Line Check Airman. Captain Ecung also

18     assumed the position of Flight Operations Duty Manager and Flight Manager. Captain Ecung left

19     the management team in good standing and on his own accord in February 2002. In 2004,

20     Captain Ecung applied for the position of Chief Pilot for the Los Angeles Flight Office and was

21     not given an opportunity to interview.

22     64. For the past three years Captain Ecung has watched as less qualified non-African-American

23     Captains are hand-picked for management positions that he is qualified for.

24     65. Captain Ecung filed his EEOC Charge in May 2012.

25     66. Captain Ecung obtained an immediate Right-to-Sue letter from the California Department of

26     Fair Employment and Housing on April 23, 2012.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

**LEON MILLER**

2   67. Captain Miller was hired at United Airlines on April 3, 1995 as a Flight Engineer/Second

3   Officer on the Boeing 727.

4   68. Prior to working for United, Captain Miller served in the U.S. Navy for 21 years as a Naval

5   Academy Midshipman Candidate, Naval Academy Midshipman, and Naval Officer from July

6   1973 to August 1994. Upon graduation from the Naval Academy, he was assigned to a six

7   month Temporary Assigned Duty as a Minority Recruiter for Officer Programs at the Navy

8   Recruiting District Miami Florida. Captain Miller, then attended six months of training at

9   Surface Warfare Officers School before reporting for duty aboard the Guided Missile Destroyer

10   USS Coontz DDG-40 from July 1979 to July 1981. His assignments included First Division

11   Officer, Electrical Division Officer and Ship's Navigator. Captain Miller qualified as a Surface

12   Warfare Officer and Officer of the Deck Underway in record time.

13   69. From 1982 to 1984, Captain Miller was a Student Pilot in Navy Jet Training Commands and

14   a Designated Naval Aviator in 1983. From 1984 to 1987, Captain Miller was an Aircraft

15   Commander. Captain Miller was a Tactical Carrier Pilot from 1987 to 1989. From November

16   1989 to January 1991, Captain Miller was a Research, Development, Test, and Evaluation aboard

17   Naval Weapons Center at China Lake, California.  From 1991 to 1992, Captain Miller was a

18   tactical Carrier Pilot with Attack Squadron 75.  From 1992 to 1994, Captain Miller was a

19   Advanced Jet Flight Instructor in the Training Air Wing Two. Captain Miller achieved a Joint

20   Service Commendation Medal, two Navy Commendation Medals, a Navy Achievement Medal,

21   and a Joint Service Meritorious Medal.

22   70. Captain Miller graduated from the U.S. Naval Academy with a Bachelors of Science degree

23   in American Political Systems on June 7, 1978.

24   71. Six months after being hired at United, Captain Miller received a First Officer bid on the

25   Boeing 737 in October 1995. Captain Miller received a Captain bid on the Airbus A-320 and

26   completed training in May 2002. Captain Miller has 6,736 hours of experience as a Captain and

27   968 hours as a First Officer on the Airbus A-320. Additionally, he has 153 hours of experience as

28   a Captain and 1,156 hours of experience as a First Officer on the Boeing 737; 1,133 hours of

13

1  experience as a First Officer on the Boeing 777, and 311 hours as a First Officer on the Boeing

2  747.

3  72. Captain Miller has witnessed and experienced racial hostility at United and heard derogatory

4  comments directed toward African Americans.

5  73. Due to the racial discrimination related to promotions at UAL, Captain Miller filed his EEOC

6  charge on April 26, 2012.

7  74. Captain Miller obtained an immediate Right-to-Sue from the California Department of Fair

8  Employment and Housing  on April 24, 2012.

9  **XAVIER PALMER**

10  75. Captain Palmer began his career at United Airlines on March 18, 1991 as a 727 Second

11  Officer.

12  76. Prior to being hired at UAL, Captain Palmer was employed by Ryan International as a B-727

13  First Officer from January 1991 through March 1991.

14  77. From January 1990 through January 1991 Captain Palmer was employed by US Air as a B-

15  727 First Officer and in July 1990 became a First Officer on the B-737/300.

16  78. From June 1981 through September 1989 Captain Palmer served on active duty with the U.S.

17  Air Force. Captain Palmer was an Instructor Pilot and trained student pilots in the T-38 aircraft

18  from April 1986 through September 1989 and also served as a Safety/accident Investigator.

19  79.  Captain Palmer served in the Air Force Reserves from September 1991 through August 2000

20  flying the KC-135 as a Co-Pilot, Aircraft Commander, Instructor Pilot, Section Leader,

21  Advanced Instrument Instructor, Evaluator Pilot, and Chief Pilot.

22  80. Captain Palmer achieved his Bachelors of Science degree in Aerospace Engineering

23  Technology in 1980 from California State Polytechnic University, Pomona.

24  81. Captain Palmer began his career at United on March 18, 1991 as a 727 Second Officer until

25  April 1992. Captain Palmer held the 747 Second Officer position until 1993.  In 1993, Captain

26  Palmer was promoted to a 737 First Officer and held this position until 1994. In 1994, Captain

27  Palmer worked as a First Officer for the Airbus A-320 and held this position until 1996. Captain

28  Palmer was promoted to First Officer on the DC-10 and held these positions until 1998. In

14

1    December 1998, Captain Palmer became a B-737/300/500 Captain. From 2001 to 2004, Captain

2    Palmer worked as an A-320 Captain. From March 2004 through November 2004 Captain Palmer

3    worked as a 747/400 Captain and First Officer. Later in 2004, Captain Palmer returned to the

4    Captain position as an A-320 Airbus Captain and currently holds this position.

5    82.Captain Palmer believes that he has been discriminated against because he has been denied all

6    three positions he applied for at UAL. The positions Captain Palmer applied for were New Pilot

7    Supervisor in 1993, Line Check Airman twice (once in 2006 and once in 2007) and Interview

8    Captain twice in 2007.

9    83. Captain Palmer filed his EEOC Charge on April 30, 2012.

10   84. Captain Palmer, who is based in California, obtained an immediate Right-to-Sue letter from

11   the California Department of Fair Employment and Housing on April 24, 2012.

12   <center>**KEN MONTGOMERY**</center>

13   85. Mr. Ken Montgomery was hired at United Airlines on July 6, 1986 as a Customer Service

14   Representative.

15   86. Prior to being hired at UAL, Mr. Montgomery attended Ohio State University form 1981 to

16   1982.  From 1982 to 1986, Mr. Montgomery attended the University of Cincinnati.  Mr.

17   Montgomery earned his Associates Degree in Electrical Engineering and Technology in 1986.

18   87. From 1986 to 1992, Mr. Montgomery worked for the Ohio Department of Natural Resources

19   as Computer Operations Manger while working at United Airlines as a Customer Service

20   Representative.

21   88. In 1992, Mr. Montgomery was promoted to Sales Representative and held this position until

22   1994. In 1994, Mr. Montgomery was promoted again to Sales Account Executive. Mr.

23   Montgomery held this position for four years until 1998 when he received a special assignment

24   as a Team Leader Supervisor at Baltimore Airport. In 1999, Mr. Montgomery transferred from

25   Baltimore to Denver keeping the same position but earning a higher salary as a Reservation Sales

26   Supervisor and held this position for two years.

27   89. In 2001, Mr. Montgomery was promoted to Supervisor of Airport Operations in Washington

28   DC's Reagan National Airport as a lateral competitive transfer. In late 2003, Mr. Montgomery

<center>15</center>

1   received another special assignment as an Acting United Airline General Manager of the

2   Richmond Airport.

3   90. In 2005, Mr. Montgomery received a Special Assignment as Ramp Supervisor at Washington

4   Dulles International Airport in Virginia.

5   91. From 2007 to 2008, Mr. Montgomery was part of the Front Line Leadership Team project in

6   Chicago, which was a special project using Lean Six Sigma tools. From 2004 to the present, Mr.

7   Montgomery has worked as Supervisor of Airport Operations at Dulles International Airport.

8   92. Mr. Montgomery, who is part of the United Coalition, filed his first EEOC charge on June 20,

9   2010.

10   93. Mr. Montgomery has applied for four positions since March 2011. In March 2011, Mr.

11   Montgomery applied for the Niche Sales Manager position. In June 2011, Mr. Montgomery also

12   applied for Country Sales Manager in Dubai. Mr. Montgomery applied for the Washington

13   Dulles Airport Leadership Development Manager Position in June 2011.  In September 2011, Mr.

14   Montgomery applied for the Hub Operations Area Manager in Dulles, VA and was interviewed

15   for the position. UAL chose Debbie St. George, who is a poor performer and has been demoted

16   previously in the same position.  Chris Branch and Alpha Diallo, who is from Senegal, were also

17   chosen for the position. Two of the promoted individuals, Debbie St. George and Chris Branch,

18   are two Caucasian individuals with no tenure, less education than Mr. Montgomery, and minimal

19   experience.

20   94. Director Bill Watts tried to persuade Mr. Montgomery to transfer to San Francisco so that he

21   would not keep applying for Area Manager positions at Dulles.

22   95. Mr. Montgomery filed his second EEOC complaint on February 3, 2012 and obtained his

23   EEOC Right-to-Sue letter on March 2, 2012.

24   96. Mr. Montgomery obtained a Right-to-Sue letter from the California Department of Fair

25   Employment and Housing on April 17, 2012.

26                                    **ANNETTE GADSON**

27   97. Annette Gadson was hired by United Airlines on July 14, 1986 as a Reservation Agent in

28   Rockleigh, New Jersey.

98. Prior to working at UAL, Ms. Gadson attended and graduated from William Howard Taft High School in 1976. Ms. Gadson also attended New York City Community College and Hunter College.

99. In 1988, Ms. Gadson was promoted to Customer Service Representative at La Guardia Airport in New York. In 1991, Ms. Gadson was promoted again to Customer Service Supervisor at La Guardia. She was transferred in 2000 to the same position at Newark Airport in New Jersey, and was transferred again in 2006 in the same position to Washington-Dulles Airport in Virginia. In 2007, Ms. Gadson was promoted to Operations Manager of Customer Service at Washington-Dulles. In 2009, company reorganization changed Ms. Gadson's title to Hub Supervisor at the Washington-Dulles Airport.

100. Ms. Gadson filed her first EEOC charge in June 2010.

101. Ms. Gadson filed her second EEOC charge on May 1, 2012.

102. Ms. Gadson obtained an immediate Right-to-Sue letter from the Department of Fair Housing and Employment in California on May 1, 2012.

### PC NOBLE

103. Captain PC Noble was hired at United Airlines on May 23, 1988 as a Flight Engineer.

104. Captain Noble enrolled and graduated from Embry-Riddle Aeronautical University in Florida. At Embry-Riddle University, Captain Noble became a part of the University's Army ROTC program. Captain Noble graduated and commissioned as a Second Lieutenant.

105. Prior to working at United Airlines, Captain Noble served in the U.S. Army. Captain Noble was sent to an armor basic course at Fort Knox in Kentucky. After this course, Captain Noble enrolled in Army Aviation Flight School at Fort Rucker in Alabama. After Captain Noble completed flight school, he was sent to Korea as a helicopter pilot from 1981 to 1983 and then became a Flight Instructor at the Army Aviation Flight School.

106. Captain Noble returned from Korea to Fort Rucker, Alabama and became an Army Aviation Flight Instructor and was promoted to a Flight Commander position. The majority of Captain Noble's career in the Army was an instructor/commander. Captain Noble applied to United in 1987 and was hired as a B727 flight engineer in 1988. Captain Noble then upgraded to a B727

17

1  first officer. While working at United, Captain Noble was activated to serve in Desert Shield for

2  the first part of the Desert Storm war.

3  107. When Captain Noble returned to United he was upgraded to a 767-757 First Officer for four

4  years. Captain Noble then moved to the 747 as a First Officer. After working as a First Officer,

5  Captain Noble was upgraded to a 767-757 Captain.

6  108. Captain Noble has suffered derogatory comments about him that have been posted in

7  United planes and management has not addressed the issue.

8  109. Captain Noble, who is part of the United Coalition, filed his first EEOC Charge in June

9  2010.

10  110. Captain Noble applied for the Standards Captain position in 2011. Captain Noble was not

11  invited to interview and received no job offers.

12  111. Captain Noble filed his second EEOC charge on February 10, 2012 and received his

13  immediate Right-to-Sue letter on March 23, 2012.

14  112. Captain Noble obtained a Right-to-Sue from the California Department of Fair Employment

15  and Housing on April 17, 2012.

16  **JOHNNIE E. JONES, JR.**

17  113. Captain Johnnie E. Jones, Jr. was hired at United Airlines on June 27, 1988 as a Flight

18  Officer.

19  114. Prior to being hired at United Airlines, Captain Jones worked as an Aircraft Maintenance

20  Specialist in the U.S. Air Force from 1972 to 1976. As a Maintenance Specialist, Captain Jones

21  performed maintenance, inspection, servicing, overhaul, and record-keeping functions on high

22  performance T-38 and F-4 military jet aircraft. During this time, Captain Jones advanced from

23  Airman Basic to Sergeant.

24  115. From 1977 to 1980, Captain Jones worked as a C-7 Flight Mechanic in the U.S. Air Force

25  Reserve. Captain Jones performed preflight inspection, various in-flight cargo compartment

26  duties and aircraft servicing. Captain Jones advanced from Sergeant to Technical Sergeant.

27  116. From 1981 to 1993, Captain Jones was a C-130 Pilot for the U.S. Air Force Reserve.

28  Captain Jones served as C-130 Co-pilot with successful transition to Aircraft Commander

18

1    assigned to the 700th TAS at Dobbins AFB, Georgia.  Captain Jones was responsible for

2    maintaining proficiency in complex military aircraft operations including airdrop and cross-

3    country missions.  Captain Jones retired at rank of major in 1995.

4    117. From 1986 until 1988, Captain Jones worked as a First Officer for regional air carrier

5    Atlantic Southeast Airlines (ASA).

6    118. In 1980, Captain Jones graduated from Clark College with a Bachelor of Arts degree in

7    Business Administration with concentration in Management and Computer Science

8    119. Captain Jones was hired as a Flight Officer/Flight Engineer in 1988.  In 1994 Captain Jones

9    was promoted to a First Officer position.  Captain Jones held that position until 2000.  In 2000

10   Captain Jones advanced to B-757/767 Captain and is currently still in that position with over

11   5,000 hours of flying experience as Captain.

12   120. Captain Jones, who is part of the United Coalition, filed his first EEOC charge on June 15,

13   2010.

14   121.  In 2011, Captain Jones applied to 767 Standards Captain, 767 Job Share Standards Captain

15   twice, Flight Safety Investigator, Airport Operations Supervisor, Flight Operations Duty Manager

16   twice, Senior Manager of Domestic Flight Operations, Director of Flight Operations, Assistant

17   Chief Pilot three times, Flight Operations Safety Management System Manager, Flight

18   Operations Regulatory Compliance Manager, Flight Operations Technical Project Manager,

19   Supervisor of Airport Operations for Cargo, and Diversity Director.

20   122. Captain Jones filed a second EEOC charge on February 10, 2012. Captain Jones received  a

21   Right-to-Sue letter on March 16, 2012.

22   123. Captain Jones obtained an immediate Right-to-Sue from the California Department of Fair

23   Employment and Housing on April 17, 2012.

24                              **FREDRICK ROBINSON**

25   124. Captain Fredrick Robinson was hired at United Airlines September 26, 1988 as a Second

26   Officer on the Boeing 727.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

125. Prior to being hired at UAL, Captain Robinson graduated with a Bachelor of Science in Business from Wayne State University in 1975. Captain Robinson earned a Masters Degree in Marketing from the University of Phoenix in 1993.

126. Prior to being hired at United, Captain Robinson worked at Eastern Airlines from 1984 to 1988 as a Second Officer and was promoted to First Officer soon after.

127. In 1988, Captain Robinson was hired at United as a Flight Operations Instructor. Captain Robinson's job was to instruct Second Officers on the Boeing 727. Captain Robinson was the only minority instructor working in the fleet at time. In the fall of 1995, Captain Robinson was chosen to conduct new hire pilot interviews. Captain Robinson remained in this position until the summer of 1999, when it was deemed by a senior interviewer that his skill level needed improving.  In May of 1995, Captain Robinson was promoted to Captain and returned to the Training Center as a Standards Captain in the 737-300 a few years later. Captain Robinson held this position for three years and then became Standards Captain for the Airbus.

128. During his tenure at UAL, Captain Robinson encountered so much racism that he dreaded coming to work.  For instance, Captain Robinson was scrutinized and evaluated by several instructors more harshly than Non-Minority Employees. Captain Robinson recalls one particular incident involving a Training Check Captain. The Training Check Captain asked Captain Robinson's opinion on the Aunt Jemima character on the brand's pancake box.  The Training Check Captain stated that he thought it was good and portrayed the black women of the day accurately.

129. Captain Robinson has applied for the Fleet Captain Job for the B-737/200 fleet but was told that the person that was selected was more qualified. The person selected for the Fleet position had only a high school degree.  Captain Robinson had an MBA. Captain Robinson applied for and was hired as the first padre of Flight Operation Duty Manager.  However, System Chief Pilot Rick Moroney told him that due to budget cuts he had to be let go, but could re-apply and do a FIT interview when the position became available again. In a matter of one month the position was filled by a Caucasian individual. Captain Robinson applied to become a Line Check Airman but was told by Bob McKay that since he was currently a Flight Operations Duty Manager that

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    he could not do both jobs, even though other Flight Manager Duty Manager had performed in

2    that same capacity.

3    130. Captain Robinson filed his EEOC charge on April 25, 2012.

4    131. Captain Robinson has obtained an immediate Right-to-Sue letter from the California

5    Department of Fair Employment and Housing on April 24, 2012.

6                              **GLEN ROANE, JR.**

7    132. Captain Glen Roane was hired at United on October 24, 1988 as a Flight Officer.

8    133. Prior to working at United, Captain Roane graduated from the Florida Institute of

9    Technology with a Bachelors of Science Degree in Aviation Management Flight Technology in

10   August 1984.

11   134. Prior to working at United, Captain Roane was a First Officer Piper Navajo for Air Lincoln

12   Airlines in Chicago, Illinois from 1980 to 1981. Captain Roane also worked as a Line Captain

13   for Comair Airlines in Covington, Kentucky from 1984 to 1988.

14   135. Due to his exemplary performance, Captain Roane was promoted to a 737 First Officer in

15   1989 and held this position for three years. In 1992, Captain Roane was promoted to DC-10 First

16   Officer and held this position for three years. In 1995, Captain Roane was promoted to a 737

17   Captain and held this position for two years. Captain Roane was promoted to an A-320 Airbus

18   Captain in 1997 and has remained in this position since.

19   136. Captain Roane also worked as an A-320 Captain at Air Arabia from November 2008 to

20   August 2009 while employed at United Airlines.

21   137. Captain Roane has received many letters from Washington-Dulles Chief Pilots for

22   outstanding service.

23   138. Captain Roane has amassed over 9,500 hours as an Airbus Captain. Captain Roane is one of

24   few United pilots who is licensed by multiple countries on the Airbus.

25   139. Captain Roane is a Certified Flight Instructor.  He is a member of the MEC Training

26   Committee Airline Pilots Association. Captain Roane is a member of the Organization of Black

27   Airline Pilots, Aircraft Owners and Pilots Association, and a United Airlines Pilot Recruitment

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF